THE PENNSYLVANIA RAILROAD COMPANY *vs.* STATE OF MARYLAND, use of CATHARINE McGIRR and others.

### *Contributory negligence.*

Where a person attempts to cross the track of a railroad at a point where no public crossing has been established, and where the individual, having no right to cross, takes upon himself the hazard of the attempt, the track itself is a warning of danger, and no other evidence of its existence is necessary.

But all persons have a right to use as a place of transit an established crossing; and in approaching such places it is incumbent on those having control of a train to observe proper care and caution, and a disregard for so plain and apparent a duty may render them obnoxious to the charge of the grossest negligence.

Notwithstanding the most culpable negligence on the part of the defendant, the plaintiff is not entitled to recover in the action if the evidence demonstrates that the infliction of the injury would have been impossible had the injured party observed due care and caution.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the following prayers numbered one, two, and four, and another numbered three, which was withdrawn:

1. If the jury believe that the defendant was operating and using a railroad track running through the town of Cumberland, and working engines and cars thereon; and that said track and railroad crossed Valley street in said town, and that Arthur McGirr was killed by a locomotive or engine while operated by the agents of the defendant

on said road; and that the said killing resulted directly from the want of the exercise of ordinary care and prudence on the part of the agents of the defendant and not from the want of ordinary care and prudence on the part of the deceased, concurring and co-operating with such negligence on the part of the defendant; and that the equitable plaintiffs are related to him in the manner set forth in the pleadings; then the plaintiffs are entitled to recover.

2. In considering the question of negligence it is competent for the jury in connection with the other facts and circumstances of the case to infer the absence of fault on the part of the deceased from the general and known disposition of men to take care of themselves, and to keep out of the way of difficulty and danger.

4. That if the jury shall find for the plaintiff, then in assessing the damages, they are to estimate the reasonable probabilities of the life of the deceased McGirr, and give his widow and children, the equitable plaintiffs, such pecuniary damages, not only for past losses but for such prosspective damages as the jury may find they have suffered, or will suffer, as the direct consequence of the death of the said McGirr; and that in awarding the damages to which the plaintiff is entitled, they must apportion the same among the equitable plaintiffs in such shares respectively as they shall find and direct.

And the defendant offered the ten following prayers:

1. That the plaintiff is not entitled to recover in this cause, because if Arthur McGirr was killed by the engine of the defendant company, his own negligence directly contributed thereto.

2. There being no evidence in this cause legally sufficient to show that the deceased, Arthur McGirr, at the time of his death was exercising such care and prudence as under the circumstances of the case was required of him in approaching the railroad track at the public crossing at which the accident occurred, the verdict of the jury must be for the defendant.

3. That the plaintiff cannot recover in this action without showing that the agents of the defendant were guilty of negligence in the management of the train mentioned in the evidence; and that the death of Arthur McGirr was caused by such negligence, and the burden of proof of such negligence is upon the plaintiff; and that the death of deceased was caused thereby; and there being no sufficient evidence in this case from which the jury can find that the death of McGirr was caused solely by the negligence of the agents of the defendant, the verdict must therefore be for the defendant.

4. That if McGirr, had he looked and listened, could have seen or heard the train which caused the accident approaching him, and before it reached the place where it struck him, then the plaintiff cannot recover in this action.

5. That if the jury shall find from the evidence in the cause, that the accident which caused the death of McGirr was in any degree owing to the want of due care and caution at the time of the accident on the part of said McGirr, then the plaintiff is not entitled to recover in this action, and the jury must find for the defendant.

6. That if the jury shall find from the evidence that Arthur McGirr, in going up Valley street and before getting upon the track upon which the engine was approaching, had looked in the direction from which said engine was coming he could have seen the said engine and in time to have avoided injury, and that, without looking, he attempted to cross said track, and was struck while so doing, and that those in charge of said engine were on the lookout when approaching said point, and after seeing him in dangerous proximity to said engine they were unable to avoid the accident, then the plaintiff cannot recover in this case, though the jury shall find from the evidence that no whistle was blown, nor any bell was rung from said engine; that it was detached from the train of cars and was run-

ning at a rate of speed greater than is limited by the city ordinance.

7. That if the jury find from the evidence in the cause, that Arthur McGirr came to his death by being struck by an engine in charge of the agents of the defendant, and that the said Arthur McGirr, although at the time of the accident he was lawfully at or upon the track of the defendant, or of a railroad then being used by it, and at a point where the railroad crosses a public street, could by the ordinary and reasonable use of his senses, considering all the circumstances of the occasion, have seen the said engine in motion and approaching the crossing, and in time to have escaped contact with it, their verdict must be for the defendant, notwithstanding they may further find that the said engine was running at a rate of speed beyond that limited by the city ordinance ; that no whistle was blown nor bell rung, and that said McGirr was in any degree intoxicated, unless they shall further find that the agents of the defendant, with full knowledge of the dangerous position of McGirr, wantonly and wilfully run or drove the said engine upon him, when it was in their power, after having become aware of his danger, to have avoided striking him.

8. That Arthur McGirr, the deceased, in approaching the railroad track where the accident complained of occurred, was bound to look up and down and across the track, or in every direction from which danger might reasonably be apprehended, and at the same time to attentively listen for any signals, warnings or noise of any approaching train ; and if they find from the evidence that at any time or place before the collision he could have thus ascertained, by the use of his senses, that the train which caused the injury was approaching from the narrows, it was his duty to ascertain that fact; and if they find he could have ascertained it by such use of his senses in time to avoid the collision, then his failure so to do was negligence on his

part, and the verdict of the jury must be for the defendant.

9. That when the engineer of the defendant's train saw McGirr approaching the track he was not obliged to stop the train, and that no negligence can be charged to the defendant for not stopping said train, and if the jury find from the evidence that the engineer, from the time he first saw McGirr approaching the track 80 or 100 feet from the crossing observed him, and as soon as he found McGirr was not stopping, but was coming too close to the track for his safety, he whistled sharply to warn him off and put the air brakes down and did all that could reasonably ·be done, and that it was impossible to stop the train before striking him, then the plaintiff is not entitled to recover, provided the jury further find that if deceased had used his senses before he was struck by the engine he could have seen and heard the approaching engine in time to avoid it.

10. That if the jury find that the railroad track approaching Valley street crossing was straight for the distance of 1000 or more feet in the direction from which the train approached and killed McGirr, and that the view of said track is and was unobstructed from said crossing, and from Valley street for a distance of 30 feet from the crossing, then that McGirr was, before crossing, bound to look up the track to avoid injury from the approaching train, and that if they find either that he did not look up for the train before crossing, or that he did look and could have seen the approaching train and attempted to cross just ahead of it, then, in either case, their verdict must be for the defendant.

And the defendant filed the following special exceptions to the granting of the plaintiff's fourth and first prayers:

The defendant excepts to the granting of the plaintiff's fourth prayer, because there was no evidence of the probabilities of life of Arthur McGirr, and no evidence of what

he earned for the support of his family, and no definite evidence of any particular amount of damage to any or either of the equitable plaintiffs.

And further excepts to the granting of the plaintiff's first prayer because it submits to the jury the finding of a fact that there was not a want of ordinary care and prudence on the part of the deceased, (Arthur McGirr,) whereas there was no evidence that there was not a want of ordinary care on the part of said deceased, but on the contrary there was evidence that there was a want of ordinary care and prudence on the part of said McGirr.

The Court (SYESTER, J.,) granted the plaintiff's first, second, and fourth prayers, the third prayer having been withdrawn, and granted the fourth, fifth, sixth, and seventh prayers of the defendant, and rejected its first, second, third, eighth, ninth, and tenth prayers.

The defendant excepted, and the verdict and judgment being rendered against it, appealed.

The cause was argued before. MILLER, YELLOTT, ALVEY, IRVING, and RITCHIE, J.

*Ferdinand Williams*, and *William Walsh*, for the appellant.

*William M. Price*, and *Henry Kyd Douglas*, for the appellee.

YELLOTT, J., delivered the opinion of the Court.

This action was instituted for the benefit of the equitable plaintiffs, the widow and children of Arthur McGirr, who was killed on the 27th day of September, 1882, at the intersection of the Pennsylvania Railroad with Valley street, in the City of Cumberland; the declaration averring that the defendant's locomotive, impelled at an unlawful rate of speed through a populous part of the town, was

negligently and recklessly driven against the deceased, as he was lawfully and properly proceeding across the track of the railway to his place of business; thus crushing and instantly killing him by the collision. The ground of defence is contributory negligence on the part of the deceased.

The testimony, presented by the record, discloses the fact that the deceased, at the time of the fatal occurrence, was passing along Valley street from his residence to his place of business, protected from the rain, which was falling, by an umbrella extended over his head and shoulders; and that, at the instant when he was about to cross the track of the railroad, he was crushed and killed by an engine operated by the agents of the defendant. The section of the city surrounding the scene of the collision is compactly built, and the street, along which the deceased was walking, is a frequented thoroughfare. The track of the defendant's road runs parallel with, and in close proximity to, that of the Cumberland and Pennsylvania Railroad; and at the locality, where the tracks of the roads are carried across the line of the street, a flagman, in the employ of the defendant, had his appointed station, and it was his especial duty to designate by signal the approach of the trains running over the rails of the road. The evidence adduced by the plaintiff tends to prove the absence of this watchman when the collision occurred; while that of the defendant shows that he was near his own house, but at some distance from the crossing. It is apparent that the usual intimation of danger was not given, and the watchman's statement that he called to the deceased is in conflict with the countervailing testimony of a witness, who says, that at the moment of the fatal catastrophe, she saw him coming from the garden adjacent to his house. This fact, as well as that in relation to the alleged intoxication of the deceased, is involved in obscurity by the doubts created by contradictory testimony.

The evidence shows that on both sides of the street, along which the deceased was walking, were houses, and from the house in contiguity to the track, on the side proximate to the approaching train, was a fence which partially obstructed the view, and extended to a point almost in immediate contact with the exterior line of the road ; there being an intervening space of only a few feet between the rail of the road and the extremity of the fence.   There is evidence tending to show that at the place where the railroad has been constructed over the street its track is nearly hidden from view at all points below the house in which the watchman lives.   There is evidence that the whistle was sounded and the.bell rung as the train approached the crossing ; the engineer saying that he saw the deceased when the locomotive was within eighty or one hundred feet of that point and indicated the danger by sounding the whistle.   This testimony is in apparent conflict with that of witnesses, who say that they heard no whistle sounded after the train passed a point near the cotton factory, situate at a distance of several hundred yards from the crossing.   An ordinance of the City of Cumberland, offered in evidence, prohibits a rate of speed exceeding six miles an hour within the corporate limits. The engineer admits that the rate of speed was beyond the maximum designated by the ordinance, and other witnesses estimate the rapidity of the running to have been twenty miles an hour.   It is proved by the plaintiff and admitted by the engineer on cross-examination, that immediately anterior to the occurrence of the accident, the engine had been detached from its train for the purpose of making a "running switch," which was a mode by which the cars, conveying the passengers and impelled by their own momentum, in the rear of the locomotive, were to be thrown upon a diverging track at a point some distance beyond the crossing.

The first question to be determined is that which is presented by the exception of the defendant to the rejection

of its first, second, and third prayers. These prayers are based upon the assumption of the legal insufficiency of the plaintiff's evidence to support the action. The granting of these prayers by the Court would have ended the controversy; and its refusal to give the instructions asked for presents an important question for determination.

In actions of this nature when the questions of fact are numerous, and many of them obscured by contradictory testimony, and thus involved in doubt, Courts have never shown any disposition to ignore the legal maxim, *ad questiones facti respondent juratores.* On the other hand when there is some prominent fact in the cause, clearly ascertained, and conclusively demonstrating that the injury complained of was directly and proximately produced by the negligence of the injured party, it is the duty of the Court to instruct the jury that there can be no recovery in the action.

In 39 *Md.*, 449, it is said that "cases may and sometimes do occur, in which the uncontradicted evidence proves such a glaring act of carelessness on the part of the plaintiff as to amount in law to contributory negligence, and in such it is the duty of the Court, when requested, to decide the question without the intervention of the jury. But in no case ought the Court to take the question of negligence from the jury unless the conduct of the plaintiff, relied on as amounting in law to contributory negligence, is established by *clear and uncontradicted* evidence." *McMahon vs. North. Cent. Railway Co.*, 39 *Md.*, 449.

In 29 *Md.*, 438, it is said that "Negligence is a relative term, and in cases of the character now before us, it is very much dependent upon the particular facts and circumstances of each case that occurs. What may be gross negligence in one case, may not be so in the light of the particular facts of another; and ordinary care in one state of case may be very gross negligence in another and a different case."

"The general rule is that negligence is a question for the jury to decide upon all the facts and circumstances of each case." *Pittsburg & C. R. R. Co. vs. Andrews,* 39 *Md.,* 343.

"Negligence is the absence of care according to the circumstances, and is always a question for the jury where there is reasonable doubt as to the facts, or as to the inferences to be drawn from them." *P. & R. Co. vs. Killip,* 88 *Penn. St.,* 412.

The determination of the question, presented in the cases just cited, necessitated the application of a principle which cannot be successfully controverted. As it is an ethical proposition, which carries with it an axiomatic force and cogency, that there can be no recognition of an abstract right or wrong, it is apparently impossible to predicate negligence of any particular act, until the relation, in which it stands to its surroundings, has been clearly ascertained, and is fully comprehended.   When a question of this nature is presented for solution in a judicial investigation the attendant facts and circumstances are to be sought for and discovered.   If the circumstances, accompanying and characterizing the act, are removed from controversy by concession, or by the absence of contradiction, the calm scrutiny and acumen of a learned Bench can readily reach the proper conclusions without the intervention and aid of a jury.   But if the evidence in the cause is antagonistic and contradictory, and the facts and circumstances are obscured by a cloud of doubt, or even if the facts are ascertained, but sound and rational minds might deduce diverse conclusions from them, the case is clearly not one for the determination of the Court.   A trial of facts has become necessary, and the organic principles of our system of jurisprudence have devolved this important duty upon the jury, enlightened by the instructions of the Court in relation to the legal principles applicable to the particular facts elicited, while analyzing the mass of evidence presented for their consideration, and dealing with the question of credibility.

In the argument of this cause the counsel for the plaintiff, with a zeal and eloquence always commendable when exerted in support of a client's claim to legal redress for alleged injuries, have earnestly contended that, if the Circuit Court had granted the first three prayers of the defendant, it would have excluded from the consideration of the jury a mass of evidence tending to prove gross negligence on the part of the agents of the company in charge of the train which crushed and killed the deceased. They strenuously urged that it was impossible to perceive negligence on the part of the deceased unless, under the circumstances, he could have seen or heard the approaching engine in time to avoid the collision; and that, on this point, the evidence was conflicting, and therefore clearly presented a question proper for the determination of a jury. With much cogency of argumentation it was contended that there was no conflict of testimony in relation to the fact that the train was being impelled at an unlawful rate of speed, nor that the cars had been uncoupled and were rapidly running by their own momentum in the rear of the engine; and that thus it might become apparent, to intelligent jurors, that if the engineer had arrested the progress of the locomotive when he saw the deceased, the train of cars would have collided with disastrous consequences. It was further urged that the statement of the engineer, that he saw the deceased when the locomotive was at a distance of about eighty or one hundred feet from the crossing, was suggestive of the inquiry, whether he had not then, by the unlawful rate of speed at which he was running, and by having uncoupled the train of cars, rendered it impossible for him to have stopped the engine and prevented the collision which caused the fatal catastrophe; and that this was manifestly a question for the consideration of a jury. It was asserted that the very act of making what is termed a "running switch" at a point in juxtaposition to a public crossing had

been declared by judicial authority to be an act indicating the most culpable recklessness; and in support of this assertion a case, in 32 *N. Y.*, 600, (*Brown vs. N. Y. C. R.,*) was cited, in which the learned Judge, who delivered the opinion, said:

"The act of making a running switch, to cut out of a long train a car to be left, and to bring the remaining portion of the train together while running at a rapid rate, evidently requires a good degree of care and skill; and if it is done over any public crossing, it must expose passers-by to more than ordinary danger. I am at a loss to see how the defendant could justify the selection of such a place for the performance of what, under the circumstances, appears to me to be so dangerous an act; and more particularly to see any ground on which a Court could adjudge, as matter of law, that it was safe and proper, in such a locality, to make a running switch, whereby one train is detached into three parts, the two last propelled by their own momentum at a rapid rate, over a much frequented thoroughfare, without signal or warning of any kind. In my judgment it was gross negligence, for which I should hesitate to say the company could not be held to a criminal responsibility."

In opposition to the instructions invoked by the defendant, it was further urged that it was in evidence that the train was running at the rate of twenty miles an hour, which fact would be, to the minds of intelligent jurors, suggestive of the hypothesis that had it been moving at the maximum speed, designated as lawful by the ordinance of the city, the ordinary gait of the deceased in walking might have carried him over the crossing and beyond the imminence of danger. And when he heard the whistle sounded, it might be asked, had he not reason to assume that the engineer was acting in conformity with legal obligations, and that, by walking at one-half the speed prescribed by the ordinance for the running of the

trains, he could cross the track without perilous exposure? And having been accustomed to see a flagman at his post, and giving intimations of approaching trains by the appointed signal, might not his absence have induced him to suppose that there was no cause for apprehension? This reasoning was supported by a citation from 56 *N. Y.*, 543, (*Kessenger vs. N. Y. & H. R. R. Co.*,) where the Court said that,

"Although it is not negligent for a railroad company to omit to keep a flagman, yet if one is employed at a particular crossing, his neglect to perform the usual and ordinary functions of the place may be sufficient to charge the company."

It has been deemed proper to thus notice the able argument of the plaintiff's counsel in order that the ground which forms the basis of this opinion may be fully disclosed. No justification of the reckless conduct of the defendant is intended. On the contrary, that conduct must be characterized as exhibiting the grossest negligence, which, under other circumstances, might have devolved on the company a fearful responsibility. If at the moment when the engineer, by uncoupling the cars, had rendered it impossible to stop the train as he approached the crossing, a procession of people, as often occurs in towns and cities, had been moving along that frequented thoroughfare, those in front being impelled onward by the momentum imparted by the multitude in the rear, and thus, deprived of the volition necessary to control their movements, carried on the crossing, a frightful calamity, resulting in the destruction of many lives, might have been the direct and proximate consequence of the recklessness of the defendant's agents. This is unlike the case of a person attempting to cross the track of a railroad at a point where no public crossing has been established, and where the individual, having no right to cross, takes upon himself the hazard of the attempt. In such cases, as has

been repeatedly said, the track itself is a warning of danger, and no other intimation of its existence is necessary. But all persons have a right to use, as a place of transit, an established crossing; and in approaching such places it is incumbent on those having control of a train to observe proper care and caution; and a disregard for so plain and apparent a duty may render them obnoxious to the charge of the grossest negligence.

It has, however, been settled by numerous adjudications that, notwithstanding the most culpable negligence on the part of the defendant, if the evidence clearly demonstrates that the infliction of the injury complained of would have been impossible had the injured party observed due care and caution, the plaintiff is not entitled to recover in the action. In the case now under consideration the evidence shows that the deceased was approaching the point of intersection, where the track of the road is laid over the line of the street, and where he knew that he might incur the risk of encountering a passing train. It was his duty to look and to listen. Even if intervening objects obscured the scope of his vision, he could have heard the sound of the whistle, the ringing of the bell, and the rumbling noise made by the movement of a ponderous locomotive. The proof shows that, pursuing a course perpendicular to the line of the track, he walked directly against the engine, and was frightfully mutilated, and instantly killed. Unless a man were intent on self-murder it is difficult to account for an act exhibiting such an utter disregard of ordinary care and caution, and such extreme recklessness.

In view of the uncontradicted facts disclosed by the record, which clearly prove contributory negligence on the part of the deceased to have been the direct and proximate cause of his death, the Circuit Court erred in rejecting the first, second, and third prayers of the defendant;

and because of this error there must be a reversal of its judgment.

*Judgment reversed.*

(Decided 21st December, 1883.)