J. BARTLETTE WHITE, administrator, *vs.* NEW YORK, NEW
HAVEN, AND HARTFORD RAILROAD COMPANY.

Plymouth.   November 11, 1908. — January 6, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Railroad.   Negligence.*

R. L. c. 111, § 188, requiring a railroad corporation to cause a bell to be rung or a
steam whistle to be sounded continuously for eighty rods on a locomotive en-
gine approaching a grade crossing of a highway, does not apply to an engine
with a freight car attached to it backing down from a freight house to be re-
coupled to a freight train which has stopped after substantially passing the
crossing, leaving the end of the last car still extending four feet over it, there
being no intention nor attempt to run the train again over the crossing.

If an old man approaches a railroad crossing on a highway, after a freight train
has passed over it and has stopped leaving the end of the rear car extending
three or four feet into the street at the crossing, and sees the flagman with his
flag standing in the street guarding the crossing, and if, with his back turned
toward the flagman, he stands on the planking between the rails of the track
and engages in conversation with the conductor of the freight train, who is on
the platform of the rear car, and, while he is standing in this way within a foot
or two of the end of the train, the engine with a car attached to it backs down
to be recoupled to the train, and in doing so forces back the train so that the
end of the rear car knocks down the old man and injures him, causing his death
after conscious suffering, his administrator cannot recover either for his con-
scious suffering or for his death, as he was not in the exercise of due care.

TORT, by the administrator of the estate of Hira W. Bates,
for his death after conscious suffering alleged to have been
caused by his being run over at a grade crossing of a highway
by a train of the defendant.   Writ dated August 10, 1901.

At the trial in the Superior Court before *Harris*, J., the fol-
lowing facts appeared by the evidence:

The injury occurred on May 8, 1901, on Cross Street in Han-
over.   The plaintiff's intestate was a man seventy-one years of
age, bright and active for his age, who for many years had lived
near the place where he was injured.   It was customary for the
defendant to run a freight train over its track from Rockland to
Hanover, passing Cross Street every week day.   The undisputed
evidence showed that Cross Street was a public way, that the
defendant's tracks crossed it at grade, and that it was a crossing
at which the defendant was obliged by law to maintain signs

and to cause notice to be given of the approach of its trains by a bell or whistle as required by R. L. c. 111, § 188. The defendant's tracks, consisting of a main track and a side track, run nearly east and west where they cross the road at the place of the accident. Cross Street is forty feet in width, and both tracks are planked substantially the full width of the street. There are no gates at the crossing, but there is a flagman's house on the northerly side of the railroad track and the westerly side of Cross Street.

On the morning of May 8, 1901, the freight train passed over the crossing at Cross Street, going toward the east. One or two cars were cut out from the middle of the train and were sent over the switch, and the rear portion of the train was stopped on the main track, so that the buggy, which was on the rear end of the rear section of the train, projected into Cross Street about three or four feet west of the easterly end of the planking on the crossing.

The engine of the train, leaving the rear portion of the buggy thus projecting a little into Cross Street, proceeded with one car about one hundred and fifty feet east, and stopped opposite the door of the freight station where some freight was discharged from the car. It was after the discharging of this freight, and when the engine and car were going back to take on the rear portion of the train which it had left behind, that the accident happened. When the two parts of the train came together, the buggy was forced back upon the plaintiff's intestate.

The plaintiff's intestate was seen approaching the crossing before the train passed, and, after it had passed and when the buggy was projecting as above stated, he started to cross the street. At that time, one Collamore, the conductor of the train, was standing on the rear platform of the buggy. He engaged the plaintiff's intestate in conversation, and the intestate stood talking with Collamore for about four or five minutes, the intestate being between the rails of the defendant's road and within a foot or two of the buggy's platform on which Collamore was standing. The flagman was stationed on the northerly side of the track, about fifteen feet from the intestate, who was standing with his side toward the car and his back toward the flagman.

One Bailey, the flagman, testified that, while the intestate was

standing as above stated, the cars to which the buggy was attached were backed down; that the intestate was struck by the buggy, was knocked down and run over; that the intestate was in conversation with Collamore until he was so struck, and that Collamore stood on the platform when the intestate was struck. Bailey testified that he took no part in the conversation between Collamore and the intestate, but stood in the street with his flag, guarding the crossing at the time the accident happened. Bailey heard no signal of any kind given before the cars struck the intestate, and testified that neither he nor Collamore gave the intestate any warning of the starting of the train.

One Mrs. Robbins testified that she saw the intestate standing at the rear of the buggy on the planking, and about one or two feet distant from the buggy; that he was about eighty feet distant from her; that she was standing in the door of her house, the engine being over a hundred feet distant; and that she heard no signal at or immediately previous to the time when the intestate was struck by the cars. The intestate was within the limits of the street when he was talking with Collamore, and he appeared to be talking with Collamore when he was struck.

One Freidman testified that he was getting freight at the South Hanover station, and was near the locomotive of the train which ran over the plaintiff's intestate; that he had been accustomed to get his freight there for three or four years, three or four times a week; that the train usually started ahead without backing, and that it was an unusual thing for the freight train to back across Cross Street; that on the morning of May 8, 1901, no signal was given when the train backed, except a whistle on the fingers given by some one of the trainmen; that at the time the engine and the forward part of the train backed there was a space of over twenty-five to forty feet between that section and the rear section to which the buggy was attached; that no bell was rung or whistle blown at the time the train backed. The train moved swiftly.

The evidence showed that the intestate died at the Massachusetts General Hospital at about eleven o'clock in the forenoon of the day on which he was injured, from the injuries caused by being struck and run over by the cars of the defendant, and that he was conscious until a short time before his death.

This was all the evidence material to the bill of exceptions.

The defendant offered no evidence, and, at the close of the plaintiff's case, asked the judge to rule that there was no evidence of due care on the part of the plaintiff's intestate; that the provisions of R. L. c. 111, § 268, did not apply to the case in question, and that, if they did, there was evidence of gross negligence on the part of the plaintiff's intestate, and asked that a verdict be ordered for the defendant on the whole evidence. The judge ruled that there was not sufficient evidence to justify a verdict for the plaintiff, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*W. J. Coughlan,* for the plaintiff.

*F. S. Hall,* for the defendant.

BRALEY, J.    This is an action of tort to recover either at common law or under R. L. c. 111, § 188, now St. 1906, c. 463, Part II. § 146, for the conscious suffering of the plaintiff's intestate, and under R. L. c. 111, § 267, now St. 1906, c. 463, Part I. § 63, for his death by reason of the alleged gross negligence of the defendant's servants.

The accident happened at a grade crossing, and the first question is, whether the defendant's failure to sound the whistle or ring the bell on the locomotive was a violation of R. L. c. 111, § 188.    It is the purpose of this section, that the signal required should be given continuously for a distance of eighty rods above the crossing, to warn approaching travellers upon the highway of the danger of attempting to cross until the train has passed. But at the time of the accident the freight train had passed with the exception of a part of the buggy, and stopped, while some of the cars had been switched, and, when the engine with one car attached backed down from the freight house to be recoupled, there was no intention of again running the train over the crossing, nor in fact was this attempted.    Under these circumstances the statute was inapplicable, and, there being no duty imposed, the failure to give the statutory warning affords no cause of action.

The plaintiff, being left to the counts at common law and for gross negligence, had the burden of proving that his intestate was in the exercise of due care.    It is abundantly manifest that as he approached, if he had taken any observation at all of the surrounding conditions which were plainly visible, he must have

seen the flagman with his flag standing in the street guarding the crossing, and the rear part of the freight train stopped with the buggy partially on the crossing. If, usually, to stand deliberately on a railroad track over which a train is likely at any moment to pass, is considered inexcusable carelessness, the act of the defendant in remaining on the planking between the rails within a foot or two of the buggy with his back to the flagman and entering into conversation for several minutes with the conductor, when, if he had taken any precaution, he must have known that, as the train came together, there might be danger of his being struck by its running back, must be deemed such contributory negligence as to preclude recovery. *Butterfield* v. *Western Railroad,* 10 Allen, 502. *Barstow* v. *Old Colony Railroad,* 143 Mass. 535, 537. See *Granger* v. *Boston & Albany Railroad,* 146 Mass. 276; *Young* v. *Old Colony Railroad,* 156 Mass. 178; *Hudson* v. *Lynn & Boston Railroad,* 178 Mass. 64; *Raymond* v. *New York, New Haven, & Hartford Railroad,* 182 Mass. 337; *Ellis* v. *Boston & Maine Railroad,* 169 Mass. 600; *Hamblin* v. *New York, New Haven, & Hartford Railroad,* 195 Mass. 555, 557.

*Exceptions overruled.*