JULIA TORRES DE RODRÍGUEZ, Plaintiff and Appellee, v. AMER-
ICAN RAILROAD CO. OF PORTO RICO and VICTORIA TIRADO DE
RODRÍGUEZ, Defendants.—AMERICAN RAILROAD CO. OF PORTO
RICO, Appellant.

No. 2969. Argued May 24, 1923.—Decided August 1, 1925.

1. DAMAGES—PERSONAL INJURY—PLEADING—APPEAL.—Admitting, without hold-
ing, that an allegation of the complaint in an action for damages for per-
sonal injury with reference to the exclusive right of the mother and widow
as sole heirs of the deceased is a conclusion of law, in the absence of ˙argu-
ment or citation of authority the defendant can not rely upon such a defect,
when noticed for the first time on appeal, as a fatal omission of an element
essential to the cause of action.

2. ID.—ID.—JUDGMENT—JURISDICTION.—A judgment that has been properly en-
tered is valid, unless the contrary is shown, although it had been signed
in a district distinct from that wherein the case was tried.

3. ID.—ID.—EVIDENCE.—It is not error for a court to admit testimony on what
might have caused the uncoupling of a locomotive from the cars and about
the brakes of a train when the testimony is in line with the averments of
the complaint with regard to the condition of the railroad track, especially
when the lower court limits that evidence as tending to show the causes that
led to the separation of the locomotive from the rest of the train through
the engineer's negligence, and this conduct, rather than the alleged negli-
gence in the maintenance of the track, is made the principal ground of the
decision in favor of the plaintiff.

4. ID.—ID.—ID.—It is not error to admit evidence over objection when, however
improper or inadmissible it may be, it might have been considered by the
lower court on grounds of public policy or for other reasons not relied upon
at the trial.

5. ID.—ID.—ID.—It is not error to admit evidence over objection when the facts
of the case show that the result below would not have been different if the
objection had been sustained.

6. ID.—ID.—ID.—NEGLIGENCE.—The question of contributory negligence, accord-
ing to circumstances that may or may not excuse such negligence, should be
left to the consideration of the trial court.

7. ID.—ID.—ID.—It is not incumbent upon the appellate court to investigate and settle, on its own motion, questions which aside from being more or less doubtful have not been raised or discussed by the appellant.

8. ID.—ID.—MEASURE OF DAMAGES.—In an action for damages brought by a father or mother for the death of their adult son the shortest expectancy of life of the plaintiff should be taken into consideration in assessing the damages.

District Court of Mayagüez, Tomás Bryan, J. Judgment for the plaintiff in an action for damages. *Modified and affirmed.*

*Mariano Acosta Velarde* for the appellant. *Juan Alemañy Sosa* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

[1] Appellant insists that the complaint does not state facts sufficient to constitute a cause of action, because it does not allege that the railroad station in question belonged to defendant, nor that the ticket purchased by the son of the plaintiff was sold by defendant, nor that the son of plaintiff made use of any public crossing, or other crossing where he had any right to go upon the track, or where any duty or obligation toward him rested upon defendant, nor that the said son was without issue at the time of his death. But, on the contrary, appellant says, the complaint does disclose contributory negligence on the part of the alleged victim of defendant's negligence.

The complaint sets forth:

"I.—That the American Railroad Co. of Porto Rico is a corporation organized and incorporated under and by virtue of the laws of Porto Rico, and on the dates hereinafter mentioned operated a railroad together with its branches, tracks, locomotives, properties, rolling stock and other appurtenances, being known as the American Railroad Company of Porto Rico and engaged in the transportation of passengers between San Juan and Ponce, touching at Lajas.

"II.—That on November 2, 1920, at about 3 p. m., Pedro Rodríguez, with others, was on the platform of the railway station of Lajas and outskirts awaiting the arrival of the mail express that was scheduled to pass there at the said hour, in order to travel thereon as passengers and that he had bought a ticket entitling him to passage on the train from the town of Lajas to Lajas Arriba.

"III.—That due to the crowded condition of the station, the capacity of which was exceedingly limited, the said Pedro Rodríguez awaited the arrival of the train at the prolongation of Victoria Street on the east side of the track.

"IV.—That due exclusively to the carelessness, fault and negligence of the defendant, The American Railroad Co. of Porto Rico, in the preservation, maintenance and care of the tracks of its railroad and in the management and operation of its locomotives on the said second day of November, 1920, the locomotive of the mail express which passes the Lajas station daily at 3 p. m. and which was driven, conducted and manipulated by employees of the defendant, The American Railroad Co. of Porto Rico, became severed from the coaches on the section between San Germán and Lajas, and that, thus disconnected, both engine and cars continued their course at an excessive rate of speed independently of each other, the locomotive being a considerable distance ahead of the cars, and that when said locomotive reached the Lajas station it whistled as customary and passed by at great speed but without sounding any alarm; that this created in the mind of the said Pedro Rodríguez the belief that the train would not arrive for some time and prompted him to cross at the place he was standing to the other side of the track to join some friend, shouting that they had been fooled (*que se había comido un pavo*); that at this moment the coaches of the mail express that had been separated from said locomotive and followed it at great speed were negligently permitted to pass said station of Lajas at great speed, without warning, striking the said Pedro Rodríguez, who, as stated, was crossing the track at that moment, hurling him to the ground, crushing his legs and head and causing his instantaneous death, all by reason of the fault and negligence of the defendant, The American Railroad Co. of Porto Rico; that the said Pedro Rodríguez observed all the care and diligence while waiting at the Lajas station that his acts, movements and deeds required.

"V.—That said Pedro Rodríguez, at the time of his death, was 31 years of age, robust and in good health, and weighed from 140 to 150 pounds; that he was an agricultural laborer and earned an average of $12 weekly; and, at a conservative estimate, would be able to work for twenty-five years longer under the same conditions as at present.

"VI.—That the plaintiff is the lawful mother of the said deceased Pedro Rodríguez, with whom she lived from the time she became a

widow, he providing her wants out of his earnings and she depending for her maintenance upon the labor of her said son.

"VII.—That the only persons entitled to the inheritance or right of succession to said deceased are his lawful mother, the plaintiff, and his widow Victoria Tirado, widow of Rodríguez, who has been made a party defendant because of inability to obtain her consent to join as party plaintiff in the present action.

"VIII.—That by reason of the fault and negligence of the defendant, The American Railroad Co. of Porto Rico, which caused the death of the said Pedro Rodríguez, son of the plaintiff, the plaintiff has suffered loss and damages consisting in services not rendered by her said son, on whose labor she depended exclusively for her maintenance, to the extent of $2,900."

We may concede for the sake of argument, without holding, that the averment with reference to the exclusive right of mother and widow as sole heirs of deceased is a conclusion of law. But we are unwilling to assume further with appellant, in the absence of any discussion or citation of authority, that such a defect, when noticed for the first time on appeal, may be successfully relied upon as a fatal omission of an element essential to the cause of action.

The other omissions enumerated by counsel for appellant, in so far as they are not necessarily implied, or reasonably to be inferred from the context, or else cured by the evidence adduced at the trial, can hardly be said to constitute a complete failure to state a cause of action.

The facts stated in the fourth paragraph above quoted from the complaint suffice to negative, explain and excuse what otherwise might be considered contributory negligence on the part of Pedro Rodríguez. *Conley's Administratrix* v. *Cincinnati, New Orleans and Texas Pac. Ry. Co.*, 89 Ky. 402; Police Law of Railroads, articles 77 to 80 inclusive and 88; *Patton* v. *East Tennessee Railroad Co.*, 12 L.R.A., 184; 20 R.C.L., page 117, section 101; 11 Thompson on Negligence, 412, section 1717.

[2] It is also suggested that:

"2.—The Court erred in rendering judgment against the appel-

lant because it was without jurisdiction, inasmuch as the judgment was rendered in chambers, outside of the judicial district of Mayagüez, and more than ninety days after the case was heard and submitted to the consideration of the Court."

The judgment purports on its face to have been rendered "in Aguadilla for Mayagüez" on March 21st and is signed by Tomás Bryan, "Judge of the District Court of Aguadilla and Special Judge in this case in the District Court of Mayagüez." It is attested by the clerk of the District Court of Mayagüez and certified by him as the "judgment recorded the 23rd of March, 1922, at page 114 of Book N of the Registry of Judgments of the District Court for the Judicial District of Mayagüez."

There is little or no argument and less discussion or analysis of authorities cited in support of the second assignment, which is rested by appellant upon the general rule and principle announced in brief extracts from, or else bare reference to, sections 21 and 22 of the Code of Civil Procedure; Law No. 25, Promulgated March 31, 1919; *Marvin & Jones v. Torres,* 19 P.R.R. 46; Estee's Practice and Pleading, section 29; *Wicks v. Ludwig,* 9 Cal. 173; Black on Judgments, Vol. 1, section 177, p. 259, p. 361, section 243; 23 Cyc. 550, 677, 563, 675 and 782; *Sawyer v. Hunning,* 181 Pac. 172; *McIntyre v. Northern Pac. Ry. Co.,* 191 Pac. 1065; 15 R.C.L., p. 610, section 51.

In the circumstances, and without closing the door to further investigation in future cases, it will suffice for the present to refer in passing to *Oronoz v. Román,* 26 P.R.R. 22, also mentioned by appellant, and to 14 Cal. Juris., pages 914, 916, section 33.

[3] Another contention is that—

"3.—The Court committed manifest error in permitting, over the objection of the defendant, plaintiff's witness Ricardo Andrades to testify as to what would have caused the uncoupling of the locomotive from the cars; about brakes and bumpers."

The witness Andrades was a brakeman and "*práctico*"

of some fifteen years experience acquired as an employee of defendant. An objection to inquiry as to the condition of the bumpers was promptly sustained. In reply to another question as to the kind of brakes used the witness was permitted to give only the name, "Westinghouse." The only other question to which objection was made in proper form, followed by exception to the ruling thereon, was as to what might cause a break in a train equipped with Westinghouse brakes. The answer, stripped of explanatory details and in so far as it need be considered herein, was in substance that the brakes have nothing whatever to do with the breaking of the train.

The gist of the argument for appellant seems to be that the complaint contains no averment as to the condition of the brakes; and the only authority cited is *De Sola* v. *Kansas City Railway Co.*, 27 S. W. 675, to the effect that, where negligence in the handling of the cars is specified as the basis of an action, evidence to show defects in brakes is inadmissible.

But the testimony of the witness Andrades, in so far as considered at all by the court below, was in line with the specific averments of the complaint, *supra*, as to the condition in which the road-bed and track were maintained, a matter unnecessary apparently to plaintiff's cause of action, which perhaps might have been stricken as too remote upon motion by defendant, if any question of this sort had been raised in the court below. But no such motion was made.

The trial judge in his findings of fact limits this evidence as tending to show the cause of the difficulties which led to the deliberate separation of the engine and tender from the rest of the train by the engineer, rather than as pointing to the proximate cause of the accident itself. And this conduct on the part of the engineer together with other acts of the fireman, whether performed pursuant to or in violation of orders given by the engineer, rather than the alleged negligence in maintenance of the road-bed and track,

is made the principal ground of the decision in favor of plaintiff.

[4, 5] The fourth assignment raises a somewhat more serious question. It is that—

"4.—The court committed manifest error in admitting in evidence, over the objection of the defendant, proof that the engineer who operated the train alleged to have run over the plaintiff's deceased was disciplined by the defendant, appellant."

Here also but a single case is cited in the brief, to wit, *Christensen* v. *Union Trunk Line*, 32 Pac. p. 1018, although at the hearing two others were mentioned, namely, *Engel* v. *United Traction Co.*, 203 N. Y., p. 321, and *Gillett* v. *Shaw*, 217 Mass., p. 59.

In the *Christensen Case* the Supreme Court of Washington, without reasoning or citation of authority, said:

"We are also of the opinion that the court should not have permitted the respondent to show that the car driver was discharged by appellant soon after the accident occurred; but, inasmuch as it was also shown that it was the rule of the company to discharge all motormen who met with accidents under any circumstances, we think the ruling was not sufficiently prejudicial to entitle the appellant to a reversal of the judgment on that ground."

The New York case speaks for itself.

The dictum in *Gillet* v. *Shaw* is that—

"The evidence in the deposition of the chauffeur Dykeman, that he was discharged two days after the accident, was not competent as an implied admission by the defendant that the chauffeur had been careless. Hewitt v. Taunton Street Railway, 167 Mass. 483."

In the *Hewitt Case* the Massachusetts court said:

"It has heretofore been held that taking additional precautions, after an accident, to prevent other accidents, is not admissible in evidence in a case like this for the purpose of showing negligence. *Shinners* v. *Proprietors of Locks & Canals*, 154 Mass. 168. *Downey* v. *Sawyer*, 157 Mass. 418. *Columbia & Puget Sound Railroad* v. *Hawthorne*, 144 U. S. 202. The same reasons which led to those decisions apply in the present case. To hold otherwise would tend to

discourage the adoption of additional safeguards by improving the quality and raising the standard of the service.''

Whether or not we should adopt the same rule in this jurisdiction is a matter that may be left open until the question·has been more definitely presented to and passed upon by a district court and more adequately developed in the briefs on appeal.

In the case at bar the only objection made at the trial was that the evidence was ''entirely immaterial,'' without any statement whatever as to why it was regarded by counsel as immaterial, nor any specification whatsoever as to the ground of the exception taken to the ruling of the court. The objection so interposed was made but once, at the threshold of the inquiry as to whether the company had ''done anything with the engineer.'' In the circumstances, the trial judge may have proceeded upon the assumption that the relevancy of the action, if any, taken by defendant would depend upon whether or not such action was based upon a belief by defendant that the engineer had been guilty of actual misconduct or negligence in·ordering the separation of the engine and tender from the rest of the train, or was otherwise in fact responsible for the accident; in which event the natural conclusion would be that the question could better be determined later. But the objection was not renewed, nor was the attention of the court below directed at any time to the true basis for the exclusion of such testimony, assuming for the sake of argument that it should have been excluded.

The subject matter of the inquiry was not of necessity ''entirely immaterial,'' however improper as a field of investigation, or inadmissible, it might have been considered upon grounds of public policy or for other reasons not relied upon at the trial. 1 Wigmore, 577, section 283.

Moreover, although the temporary suspension from employment and reduction in rank is mentioned in the findings, the court below does not base its finding as to the negli-

gence of the engineer solely nor even primarily upon any implied admission by defendant, but apparently upon the positive testimony of eye-witnesses, corroborated by physical facts established by the evidence as a whole and in part by a view of the site of the accident, and strengthened rather than weakened by the engineer's own vague, incoherent and self-contradictory account of the incident and of his active connection therewith. Indeed, upon a careful reading of the findings and conclusions as a whole we are quite convinced that the result below would not have been different, even if defendant had stated a more tenable ground of objection, and if an objection so made had been sustained.

The fifth proposition is that—

"5.—The Court committed manifest error in finding that Pedro Rodríguez was a passenger of the defendant, appellant, and rendering judgment on that ground."

For present purposes we may admit, with appellant, that Pedro Rodríguez at the precise moment of his death was not entitled to expect or demand any extraordinary degree of care or protection from danger by reason of the relationship of passenger and carrier. Beyond this the fifth assignment, as presented and submitted in the brief for appellant, does not demand serious consideration.

To the end that the court below may speak for itself rather than through an interpreter, and as an aid to a better understanding of the real bearing of subsequent assignments upon the merits of the instant case, we are constrained, even at the risk of seeming impropriety, to set forth in full the findings and conclusions filed by the trial judge:

"From the evidence introduced the Court finds that the defendant, The American Railroad Co. of Porto Rico, is a corporation authorized now and on November 2, 1920, to do business in this Island; that it is engaged in the operation of a railroad for the transportation of freight and passengers between various points of Porto Rico and passes the town of Lajas; that the general elections were being

held in the Island of Porto Rico on November 2, 1920, for which reason the movement of people from the country to the towns and cities was greater than at any other period; that the mail express which makes the daily run from San Juan to Ponce passes, and on the date mentioned passed, the town of Lajas at about 3 p. m.; that on November 2, 1920, at approximately 3 p. m. the platform of the station of the American Railroad Co. of Porto Rico at Lajas was occupied to its full capacity—about forty or fifty persons—and around and in front of the said depot as far as the corner of Victoria street were about three hundred more persons, nearly all of whom were awaiting the arrival of the train which was scheduled to pass the said station at the said hour, in order to be taken to their respective homes in the different districts of the town of Lajas which they had left that day for election purposes; that among those waiting for the train at that time and hour in front of the station on the other side of the track as far as the corner of Victoria street, was a man named Pedro Rodríguez, a little over 30 years of age, of robust health, and occupied in the tilling of the soil and agricultural labor, for whom a ticket had been purchased and delivered entitling him to travel on the train from Lajas station, where he was awaiting it, to Lajas Arriba; that at about the usual hour, 3 p. m., the persons congregated at the station heard the whistle of the mail train announcing its arrival in the ordinary way; that said persons, Pedro Rodríguez among them, made ready to take the train, some on one side and some on the other side of the track; that shortly after hearing the whistle the said engine passed singly in front of the said station, but without stopping, at great speed and with no cars nor coaches attached, the line being entirely clear and all the persons who awaited the train in places of safety; that as a result of the engine's passing the station under such conditions, many of the persons there assembled broke out into acclamations for the political parties and others shouted that they had been fooled (*que se había comido un pavo*), because it was not the engine of the mail express for which they were waiting; that the persons there congregated—among them Pedro Rodríguez—were under the reasonable impression that neither the mail nor any other train would pass there and that no train was near, and therefore began to withdraw from the station in the direction of the town, to do which those on the opposite side of the track in relation to the station building and the town had to cross the track; that at the moment in which, under those circumstances, Pedro Rodríguez

was crossing the track in direction of the town, crying that they had been fooled (*que se había comido un pavo*), he was struck and killed by the coaches of said mail express which had broken away and become separated from the engine long before it arrived at the station, and which, without any signs or warning, when there was no reason nor cause for Pedro Rodríguez or any other person there assembled to apprehend their proximity or the possibility of their passing by, due to a curve in the track that nearly reaches the station itself, suddenly appeared, crossing and passing in front of said station; that on that same day and after the mail express had left the city of San Germán on its run by Lajas the passengers began to experience violent jerks and joltings until the engineer stopped the train on a down grade between San Germán and Lajas, found the bumpers to be in bad condition and ordered the leaving of the train by way of the tender; that the fireman, who was in the engine, started the latter in order to disconnect it from the coaches and to allow these to remain stationary, but that as the cars, which were empty, were on an incline and began to follow the engine after being disconnected therefrom, the fireman got scared and ran the engine ahead of the cars at great speed and the engineer boarded the train which followed close upon the engine and in this way they passed the station of Lajas; that the bad condition in which defendant's track was kept was the cause of the bumping, jerking and disarrangement of the bumpers of the train before the break, and that this break or the disconnecting of the engine from the rest of the train was due to the manner in which the train was handled, operated, run and manipulated by the employees of the defendant, The American Railroad Co. of Porto Rico; that the latter disciplined the engineer of said train, Santana, by reprimanding and temporarily suspending him without pay; that at the time of the demise of Pedro Rodríguez, November 2, 1920, his sole universal heirs were his lawful mother, plaintiff Julia Torres, widow of Rodríguez, and his wife, defendant Victoria Tirado, widow of Rodríguez, in the proportion prescribed by law; and that the said Pedro Rodríguez provided for the wants of his mother, the plaintiff, out of his earnings, and that the latter depended exclusively thereon for her support and maintenance.

"From these findings of fact the Court reaches the conclusions of law that the defendant, The American Railroad Co. of Porto Rico, was careless and negligent in the care, circumspection and preservation of its track between the city of San Germán and the

town of Lajas on the said date, causing the bumping of the train and the disarrangement of the bumpers, and that said defendant was also negligent in the handling, operating and manipulating of its said mail express in the section comprised between the city of San Germán and the town of Lajas on November 2, 1920, as a result of which the train broke or parted in two and, thus severed, continued in motion, and that the coaches of said train, while passing the Lajas station in such careless and negligent manner, ran over and killed Pedro Rodríguez; that the proximate and immediate cause of this accident causing the death of the said Pedro Rodríguez, was the fault, abandonment and negligence of the defendant, The American Railroad Co. of Porto Rico, in connection with the use, care and preservation of the said track and in the operating, handling and manipulation of said train.

"As to the plea of contributory negligence made by the defendant, The American Railroad Co. of Porto Rico, the court reaches the conclusion that, viewing the circumstances under which said Pedro Rodríguez crossed the track at the time he was run over and killed by the engine of the defendant company, he was guilty of no negligence nor was he a transgressor nor 'licensee', and in this connection the court refers to Sherman and Redfield on Negligence, Vol. 2, p. 1466, Sec. 525, and cases, to show the lack of contributory negligence; and to sections 488 and 490, pp. 1297 and 1307 of the same work in connection with the relations existing between said Pedro Rodríguez and the defendant, The American Railroad Co. of Porto Rico, at the time of the former's death.''

The assignments of error not already discussed are that—

"6.—The Court committed manifest error in rendering judgment against the defendant on the ground that the defendant was negligent in the handling and manipulation of its trains and in the maintenance and preservation of its track.

"7.—The Court committed manifest error in rendering judgment against the defendant on the ground that the defendant was negligent in the handling and manipulation of its trains and in the maintenance and preservation of its track, and that this was the immediate and proximate cause of the running over and killing of Pedro Rodríguez.

"8.—The Court committed manifest error in holding that the deceased Pedro Rodríguez was not guilty of contributory negligence

and that this was not the proximate and immediate cause of the accident.

"9.—The Court committed manifest error in rendering judgment in favor of the plaintiff since, according to the weight and preponderance of thé evidence, the defendant was not guilty of negligence or of the proximate cause of the accident, the deceased Pedro Rodríguez, according to the clear trend of the evidence, being guilty of contributory negligence, which was the proximate cause of his death.

"10.—The Court committed manifest error in rendering judgment against the defendant, directing it to pay the plaintiff the sum of $2,600 together with the costs of this action and interest."

[6] We do not deem it necessary to follow counsel for appellant in a discussion of all the cases cited in support of assignments 6 to 9 inclusive, nor to take issue with the abstract propositions of law announced in the extracts quoted in the brief.

The facilities for investigation and research in some of the outlying districts seem to be quite limited; and it may be conceded that the citation from Sherman and Redfield leaves much to be desired in the way of support for the conclusions reached by the court below. The frequency with which the same work is cited in the brief for appellee and the paucity of other authorities would seem to indicate that the trial judge did not have the advantage of a very wide field of selection. In the circumstances, the result below is perhaps a more or less striking example of the trustworthiness of a sound judicial instinct as a proper guide in the absence of a superabundance of decided cases from other jurisdictions.

The nearest approach to the case at bar among the authorities relied upon by appellant is to be found in *Pennsylvania Railroad Co.* v. *McGin,* 61 Md. 108, and *Rodriques* v. *N. Y., N. H. & H. R. R. Co.,* 96 N. E. 684, cited as holding that—

"The negligence of a railroad company in breaking its train and running its engine rapidly in front of the cars following it, does not

excuse the contributory negligence of a person struck and injured at a crossing or grade crossing."

And *Woodward* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 369, is invoked to show that "this theory is applicable to street crossings."

We do not have access to Vol. 61 of the Maryland Reports, nor do we find the first of the three cases last above mentioned listed in the Century Digest.

The syllabus to *Rodriques* v. *N. Y., N. H. & H. R. R. Co.*, *supra*, reads thus:

"A railroad company, when sued under St. 1906, c. 463, pt. 2, sec. 245, establishing liability against a railroad failing to give statutory signals for crossings, whereby the death of a traveler ensues, unless decedent's own gross or willful negligence or unlawful act contributed to his death, has the burden of proving the gross or willful negligence or unlawful act of decedent as a contributing cause.

"Plaintiff, suing under St. 1906, c. 463, pt. sec. 63, as amended by St. 1907, c. 392, establishing liability against a railroad for the death of a person in the exercise of due care, must show that a traveler killed at a grade crossing actively exercised his faculties to protect himself, and where he merely shows that decedent was last seen alive leaving a saloon several minutes' walk from the crossing, and that a little later his lifeless body was found on the crossing under a freight car, but fails to show that decedent took any precaution for his own safety as he approached the tracks, fails to show that decedent exercised due care.

"St. 1096, c. 463, pt. 2, sec. 147, prescribing signals of trains approaching highway crossings, when considered in connection with section 245, making a railroad failing to give signals liable for the death of a traveler at a crossing, unless the traveler was guilty of gross or willful negligence or unlawful act contributing to his death, applies only when a locomotive itself or cars attached thereto pass a crossing, and does not apply where, in switching, a single car detached from a locomotive passes a crossing."

Upon the point last mentioned the court said:

"The necessary implication from said sections 147 and 245 is that the whistle must be sounded or the bell rung only when the

locomotive itself or cars attached to the locomotive pass the crossing. White v. N. Y., N. H. & H. R. R., 200 Mass. 441–444, 86 N. E. 923. The reason for this well may be that the Legislature did not intend to create what might be in many instances almost an intolerable nuisance of noise in neighborhoods where highways cross switching yards or tracks used in part for switching purposes, but to leave the protection of travelers there to the general obligation resting upon railroad companies, under all circumstances to use due care at every crossing, and upon the powers conferred on the board of railroad commissioners to order the erection of gates and the stationing of flagmen. Since the car which struck the plaintiff's intestate was not one for which the statutory signals were required, the plaintiff failed to make out any case under his first count.

"It becomes unnecessary to consider whether there was any negligence on the part of the defendant or gross negligence of its servants or agents."

In the absence of any discussion or analysis of the case, or comparison of statutes, in the brief for appellant, further comment would seem to be superfluous.

What the court, by a bare majority, held in the *Woodward Case,* as stated in the syllabus, was that:

"The facts made it absolutely certain either that W. looked and, seeing the car coming, undertook to cross in front of it, or did not look when it was his duty, and was, therefore, chargeable with contributory negligence; and that a submission of the question to the jury was error."

Aside from circumstances regarded as insufficient to excuse such contributory negligence, the facts referred to, in so far as they need be restated here, are outlined in the majority opinion as follows:

"Philo P. Woodward, the plaintiff's intestate, was employed at a coal yard owned by one Houck, which fronted on Canisteo street and ran back to the premises of the railroad. While so employed he became entirely familiar with the crossing, and especially with the use made of the Osborn house-switch. Upon that was placed the coal destined for delivery in Hornellsville, and the cars containing it were habitually shunted down that switch and across the street to the place of unloading. The plaintiff himself had often inquired

at the freight office for his employer's coal, and directed upon what switch the cars should be placed. One coming southeasterly along Canisteo street from Houck's coal yard, would have at his right, first, a vacant lot bounded by a high fence toward the rails, and, next, a building known as Crotty's store. While passing that the track west of the crossing could not be seen, but when the southeastern corner was reached, being thirty-one and a half feet from the intersection of the street with the rails, the switch could be seen to the west a distance of fifty-seven feet. When within ten feet of the track it could be seen a distance west of 137 feet, and the map shows that when within two feet of the track the switch could be seen for its whole length to the west, and some stretch of the main track besides.

"The plaintiff's intestate and one Phelps approached the crossing carrying a basket of coal brought from Houck's and deceased was struck at the southerly rail of the switch, and when almost across it, by one of the coal cars kicked down from the west and moving by its own momentum. The accident occurred in the middle of a bright and clear day, when nothing existed to obstruct or hinder the sight, when the injured man was on foot and could have stopped at any instant, and when the merest glance along the switch to the west would have developed the approaching danger. The car and the man met at the intersection of track of street. The highest speed of the former is put at four miles an hour, and if we call the walk of the latter as slow as one mile an hour the cars moved four feet while he moved one, and when he was ten feet from the crossing they were but forty feet from the crossing, and moving down upon it in plain sight. If he was walking faster they were still nearer, and it is absolutely certain that at any time when within ten or fifteen feet deceased had only to look and pause to be safe. Indeed, Cook, called for the plaintiff, swears that the cars were within ten or twelve feet of them when the two men stepped upon the track, so that the facts make it absolutely certain that Woodward and Phelps either looked and, seeing the car coming, undertook to cross in front of it, or did not look, when that was their duty, and went blindly upon the track, taking the chances of what might occur. The evidence is very slight that either of them looked to the west at all after passing Crotty's store. Phelps admits that he looked only while passing that store, and so at a time when he knew that he had not guarded against the danger of the shunted cars likely to come upon the crossing at any hour of the day; but

if they did look after passing that point the inference is inevitable that they saw the cars coming and misjudged their ability to cross in their front. The case is one where ordinary prudence and care was not shown or inferable, and for which no excuse or palliation can be given.''

Three of the seven judges, in a strong dissenting opinion, concur in the view that the case as a whole constitutes no exception to the general rule that the question of contributory negligence, *vel non* according to circumstances, which may or may not excuse such negligence, should be left to the jury. See also *Oldenburg* v. *New York Central & Hudson River R. R. Co.*, 124 N. Y. 414, and cases cited, where the same court was unanimous in its adherence to, and affirmance of, the general rule.

In so far as the law governing accidents at street or grade crossings is involved herein, the case as developed at the trial seems to be a stronger one for plaintiff than is indicated either by the complaint or by the findings.

When the engine passed, plaintiff's intestate was seated or standing at a street crossing between the station and the curve around which the engine had just come, and within some eight or ten meters of the station, on the opposite side of the track but at a point diagonally across from the station. His view in the direction from which the unsuspected danger emanated was obstructed. Being already stationary, he was not required to stop before putting himself in motion. What little noise the swiftly moving cars may have made was drowned by the sound of the passing engine and the cheers of the crowd about the station.

A number of people, somewhat further away from the street crossing and more directly opposite the station succeeded in crossing behind the engine and before the arrival of the loose cars. One of these, about the time plaintiff's intestate was struck, narrowly escaped a like fate by jumping from the track.

The general impression as shown by this movement, and

as alleged in the complaint and found by the trial judge, was that the arrival of the train had been delayed. The inference drawn by Rodríguez himself is evidenced by his last words, which seem to have been quite intelligible to the understanding of all who heard them and of all persons concerned at the trial, not in a literal sense but as conveying the thought that the prospective departure of the waiting passengers had been postponed.

Rodríguez, instead of proceeding at right angles across the track upon the street crossing, took a somewhat diagonal course inclining more or less toward the general direction of his friends who were gathered about the station, thus putting the crossing between himself and the source of danger. He was struck at the edge, or within a meter or two of the edge, of the crossing.

Unless we are to hold that, notwithstanding the provisions of our own statute, the running of a racing train of detached and uncontrolled cars around a sharp curve and over a village street crossing, from which the approaching danger can not be seen, on the day of a general election at 3 o'clock in the afternoon when a passenger train is due, without warning and within a few seconds or a minute or two after the passage of a locomotive which has sounded the usual and ordinary signals, is not negligence.

Or that a pedestrian approaching the crossing has no right to expect that the customary statutory signals will be given, nor to rely upon his ears when his view is obstructed.

Or that such pedestrian, if seated or standing within a meter or two or less than a meter from the rail, must first start and then stop, look and listen, before taking the step that will bring him upon the track, even though there is no sound to be heard and looking is of no avail.

Or that any deviation or departure, however slight, from the traveled portion of the street crossing will convert such pedestrian into an ordinary trespasser without right to recover in the absence of a deliberate intention to kill, even

though such course puts additional space and distance between him and the unforeseen danger and in no wise contributes to his injury.

Or that the question of contributory negligence, in such circumstances, is purely a matter of law and not a question of fact, or of mixed law and fact.

Then, under our statute there would seem to have been in this case a triple obligation resting upon the defendant, and a triple duty owing to Pedro Rodríguez, by reason of the immediate proximity of station, street crossing and curve; and the substantial justice of the result below becomes, in like proportion, more apparent.

[7] It is not incumbent upon this court to establish the absolute correctness of that result, beyond all cavil, nor of our own motion to investigate and settle more or less doubtful questions not raised nor discussed by appellant. If the doctrine of last clear chance, or the exploded theory of comparative negligence, be involved at all, a final determination of the extent to which they are involved and, if need be, the proper scope and authority of the instant case as a precedent, may well be left to the future. The case has already consumed an amount of time and labor out of all proportion to its intrinsic importance, as will appear from our conclusion with reference to the tenth assignment.

In addition to authorities already cited, and by way of indicating a starting point for further investigation, we are content for the present to call attention to the following: 22 R.C.L. 945, Sec. 87; 971, Sec. 203; 973, Sec. 204; 980, Sec. 211; 995, Sec. 224; 1000, Sec. 228.

[8] We are inclined to agree with appellant that plaintiff's shorter expectancy of life should be taken into consideration in assessing the damages, and that from this point of view the amount awarded by the court below is somewhat larger than the circumstances, including such expectancy, can be said to justify. 8 Cal. Jur., p. 1018, sec-

tion 61'; 17 C. J., pages 1331, 1332, 1354, sections 202 and 241.

Nevertheless, plaintiff, a woman of fifty years, took the stand and the trial judge was in a position to gather from her general appearance, physique, vigor of mind and body, some idea and perhaps a more accurate and reliable concept of her reasonable expectancy of life than could have been derived from expert testimony and mortality tables.

Pedro Rodríguez earned from six to eight dollars a week and out of this supplied the needs of himself, his wife, and his mother, the plaintiff, who had other children, but no other actual source of supply or means of support.

Assuming that plaintiff received approximately one-third of her son's wages, this would amount to at least one hundred dollars per annum.

All things considered, and giving plaintiff and the court below the benefit of any reasonable doubt, we think that fifteen hundred dollars, interest until payment is made in full, and costs, would be a fair and conservative estimate.

The judgment will be modified accordingly, and, as modified, affirmed.